## *In re* LATHAM.

(In Banc. Feb. 1, 1932.)

[139 So. 457. No. 29421.]

See, also, 136 So. 625, 138 So. 561.

Judge Jeff Truly, of Fayette, J. H. Currie, of Meridian, W. C. Sweat, of Corinth, L. A. Smith, Sr., of Holly Springs, W. S. Welch, of Laurel, and Louis M. Jiggitts, of Jackson, for appellant.

## PER CURIAM:

This is a proceeding initiated by the State Bar Association for the disbarment of the respondent, who is an attorney at law, and is a companion case of In re Carl Marshall, 138 So. 298, decided by this court on November 30, 1931.

The misconduct with which the respondent is charged constituted the beginning of that train of events which culminated in the disbarment of Marshall, and occurred while the respondent was a citizen of, and engaged in the practice of law in, this state. Afterwards he moved to, and now lives in, Aurora, Illinois. Process herein was served on him by publication in accordance with sections 2972 and 2975, Code of 1930.

Among the charges preferred against the respondent are that he (a) attempted to stir up strife and litigation; and (b) purchased from a former employee of Warren Bros. Company, for use as evidence in an action at law,

which he intended to file against Warren Bros. Company, letters and other private papers of Warren Bros. Company which came into the employee's possession by virtue of his employment, and which he was wrongfully withholding from Warren Bros. Company.

These charges are fully sustained by the evidence, from which the following appears:

Warren Bros. Company and its subsidiary corporations are engaged in the manufacture of road-paving material, and in the paving of public roads. One Marvin, a former employee of Warren Bros. Company, had in his possession a number of letters and other private papers belonging to Warren Bros. Company which he had either stolen from, or which came into his possession by virtue of his employment by, Warren Bros. Company. (The respondent referred to them in a conversation with one of the witnesses as "the stolen papers.") Marvin showed these papers to the respondent, and, on the respondent's agreeing to pay him five thousand dollars therefor, delivered them to him. The papers disclosed confidential trade secrets of Warren Bros. Company, and also the methods by which it and its subsidiary and allied corporations obtained contracts for public road paving, which the respondent thought would be evidence sufficient for the maintenance of an action by the state for the collection of the statutory penalties for the violation of the state anti-trust law. He then obtained the consent of the attorney-general for the filing of such an action, he to be associated with the attorney-general as counsel therein. He then, but without the knowledge of the attorney-general, approached one or more agents of a competitor of Warren Bros. Company, and sought to induce them to obtain from their principal and other competitors of Warren Bros. Company money with which to pay the expense of preparing the proposed anti-trust suit against Warren Bros. Company for trial, including

the money he had agreed to pay Marvin for the papers in his possession, belonging to Warren Bros. Company, representing to them that one of the results of the suit would be to practically eliminate Warren Bros. Company from further competition in business with those from whom he was soliciting the money. He stated to one of the witnesses that one of the purposes he intended to accomplish by filing the suit against Warren Bros. Company was to thereby depress the value of its corporate stock, so that, by previously selling this stock "short," he would be able to make a considerable profit thereon.

Stirring up strife and litigation is a misdemeanor at common law, is condemned by section 28 of the American Bar Association's Canons of Professional Ethics, and is one of the violations of duty most calculated to bring odium on the legal profession. If indulged in by any appreciable number of its members, it would bring the profession into such disrepute as to seriously impair the efficient administration of justice, which rests, in the last analysis, upon the confidence of the people in the ability and integrity of bench and bar. By stirring up strife and litigation, an attorney at law demonstrates beyond cavil his unfitness for the practice of his profession; for "a worse man," in the words of Abraham Lincoln, "can scarcely be found than one who does this."

Assuming that these letters and private papers of Warren Bros. Company came into Marvin's possession legally, by virtue of his employment by Warren Bros. Company, it was his duty to return them to Warren Bros. Company, when his employment ceased, and his thereafter withholding them from it, for the purpose of gain, was the moral equivalent of theft. When the respondent purchased them from Marvin, knowing that he was wrongfully withholding them from Warren Bros. Company, with the intention of using them against the interest of Warren Bros. Company, he thereby put him-

self in Marvin's place, and assumed his moral guilt in withholding the papers. Moreover, the respondent's conduct in becoming a party to Marvin's violation of his duty to his employer demonstrates that he would lightly regard his own similar obligation "to demean himself . . . with all good fidelity as well to the court as to the client," which he solemnly swore to do when he was admitted to the bar. Section 3692, Code of 1930.

Respondent's name will be stricken from the roll of attorneys at law, his license to practice law will be revoked, and he will not hereafter be permitted to act as attorney or counselor in any court in this state. So ordered.